UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                              )
MICHAEL ANDREW SILVA,         )
                              )
                Plaintiff,    )
                              )        CIVIL ACTION
        v.                    )        NO. 16-10700-WGY
                              )
NANCY A. BERRYHILL[1],         )
Acting Commissioner,          )
Social Security Administration, )
                              )
                Defendant.    )
_____)


YOUNG, D.J.                                    July 11, 2017

**MEMORANDUM & ORDER**

I.   **INTRODUCTION**

        Michael Andrew Silva ("Silva") brings this action pursuant

to the Social Security Act (the "Act"), 42 U.S.C. § 405(g),

seeking review of the decision of the Commissioner of Social

Security (the "Commissioner") denying his application for

disability benefits and Supplemental Security Income

(collectively, "benefits").  For the following reasons, this

Court affirms the Commissioner's decision.

_____

        [1] Nancy A. Berryhill is now the Acting Commissioner of
Social Security.  She is substituted for Carolyn W. Colvin as
the defendant in this case.  Fed. R. Civ. P. 25(d).

**A.   Procedural History**

On March 7, 2013, Silva filed an application for benefits,
alleging disability since September 10, 2010.[2]  Admin. R. 21, ECF
No. 11.[3]  Silva's application was denied on July 30, 2013, and
upon reconsideration, denied again on November 8, 2013.  Id.
Thereafter, Silva requested a hearing, which was held on August
31, 2015.  Id.  The hearing officer[4] concluded that Silva became
disabled beginning January 10, 2015, for the purpose of
supplemental security income.  Id. at 22, 44.  On February 26,
2016, the Appeals Council undertook review on its own motion,
reversing the hearing officer's decision on supplemental
security income and denying Silva benefits.  Id. at 1-9.

On April 12, 2016, Silva filed a complaint in the federal
district court challenging the Commissioner's final
administrative decision denying benefits.  Compl., ECF No. 1.
The Commissioner filed an answer on July 15, 2016.  Answer, ECF
No. 10.  Silva then submitted a memorandum in support of his

---

[2] Silva previously filed an application for benefits on
December 8, 2011, which was denied initially, and no hearing was
requested thereafter.  Admin. R. 21.

[3] The administrative record spans multiple docket entries,
labeled ECF Nos. 11-1 through 11-11. For the sake of simplicity,
this Court cites page numbers in the continuously paginated
record as a whole, omitting reference to particular ECF numbers.

[4] For an explanation of the Court's use of the term "hearing
officer," see Vega v. Colvin, 164 F. Supp. 3d 249, 251 n.1 (D.
Mass. 2016).

motion to reverse the Commissioner's decision, requesting the decision be vacated and the case be remanded for a new administrative hearing.  Mot. Reverse Mem. Law ("Pl.'s Mem.") 12, ECF No. 17.  The Commissioner filed a memorandum requesting the decision be affirmed, Mem. Law Supp. Def.'s Mot. Affirm Commissioner's Decision ("Def.'s Mem."), ECF No. 23, to which Silva filed his response, Pl.'s Resp. Def.'s Opp'n Mot. Reverse Def.'s Mot. Affirm ("Pl.'s Resp."), ECF No. 30.  This Court heard oral arguments[5] on March 10, 2017, and took the matter under advisement.  Electronic Clerk's Notes, ECF No. 32.

### B.    Factual Background

Silva was 51 years old as of the date of his complaint. Pl.'s Mem. 1.  He has at least a high school education and can communicate in English.  Admin. R. 42.  From June 1, 2012 to January 7, 2013, Silva worked as a school bus and taxi driver. Id. at 24.  He has a history of alcohol addiction.  Id. at 27-29.  Silva alleges that "he suffers from scoliosis, low back pain, inflammatory arthritis, hypertension, gout[,] and 'fuzzy' vision."  Id. at 25.  The hearing officer concluded that Silva was severely impaired as a result of "cervical spondylosis,

---

[5] This Court has commenced giving oral hearings in Social Security cases.  See Mauro King v. Berryhill, No. 15-00285-WGY, 2017 WL 1753442, at *1 n.5 (N.D.N.Y. Apr. 14, 2017), for an explanation of this change.  In this case, the oral hearing proved to be a great help.  See n.6 infra.

depression and alcohol dependence." Id. at 24. Additionally,
Silva claims that his mental impairments such as depression and
anxiety "limit his social functioning and affect his ability to
maintain concentration, persistence or pace." Pl.'s Mem. 9.
The Commissioner, however, found that Silva's "capacity for
standing and walking is only slightly reduced from the full
'light' exertional level, from six to four hours." Admin. R. 5.
The Commissioner concluded that "because Silva could perform at
least one job, that of ticket seller, he was not "disabled"
under the Act. Id. at 6.

## II. DISCUSSION

### A.    Standard of Review

The Act defines "disability" as an "inability to engage in
any substantial gainful activity by reason of any medically
determinable physical or mental impairment." Bowen v. Yuckert,
482 U.S. 137, 146 (1987) (citing 42 U.S.C. § 423(d)(1)(A)). To
determine disability, the Commissioner adopts the following
sequential five-step process:

> 1) if the applicant is engaged in substantial gainful
> work activity, the application is denied;
> 2) if the applicant does not have, or has not had
> within the relevant time period, a severe impairment
> or combination of impairments, the application is
> denied;
> 3) if the impairment meets the conditions for one of
> the "listed" impairments in the Social Security
> regulations, then the application is granted;

> 4) if the applicant's "residual functional capacity"
> is such that he or she can still perform past relevant
> work, then the application is denied;
> 5) if the applicant, given his or her residual
> functional capacity, education, work experience, and
> age, is unable to do any other work, the application
> is granted.

Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20

C.F.R. § 416.920). The claimant bears the burden of proof up to

step 4, after which the Commissioner, at step 5, must "[come]

forward with evidence of specific jobs in the national economy

that the applicant can still perform." Id.

The Commissioner's decision on disability is to be reviewed

de novo to determine "whether the final decision is supported by

substantial evidence and whether the correct legal standard was

used." Id. at 9 (citing 42 U.S.C. § 405(g)). This Court may

enter a final "judgment affirming, modifying, or reversing the

decision of the [Commissioner] with or without remanding the

cause for a rehearing." Forney v. Apfel, 524 U.S. 266, 269

(1998) (citing 42 U.S.C. § 405(g)). The Commissioner's

determination is conclusive when supported by substantial

evidence, i.e., when "a reasonable mind, reviewing the evidence

in the record as a whole, could accept it as adequate to support

the [Commissioner]'s conclusion." Rodriguez v. Sec'y of Health

& Human Servs., 647 F.2d 218, 222 (1st Cir. 1981); see also

Musto v. Halter, 135 F. Supp. 2d 220, 225 (D. Mass. 2001). On

the contrary, decisions "derived by ignoring evidence,

misapplying the law, or judging matters entrusted to experts," are not conclusive.  Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).  Whereas the Commissioner is responsible for weighing conflicting evidence, Seavey, 276 F.3d at 10, this Court may review conclusions of law.  Musto, 135 F. Supp. 2d at 225.

### B.  Waiver

The Commissioner argues that the Appeals Council's review of the hearing officer's decision was limited to the narrow issue of whether Silva's residual functional capacity ("RFC") could be characterized at the sedentary exertional level. Def.'s Mem. 3-4.  Specifically, at the oral hearing, the Commissioner argued that Silva failed to challenge whether a ticket seller's job was a light job or sedentary before the Appeals Council, and therefore waived the issue on appeal. 3/10/2017 Hearing Tr. 1:4-18, 1:24-3:1.  The Commissioner adds that she invited Silva to submit new evidence, which she took into consideration in making her decision.  Admin. R. 5, 7-8; Def.'s Mem. 12.

In the context of social security cases, the Supreme Court held that "[c]laimants . . . need not [] exhaust issues in a request for review by the Appeals Council in order to preserve judicial review of those issues."  Sims v. Apfel, 530 U.S. 103,

112 (2000).[6]  Because "Social Security proceedings are

inquisitorial rather than adversarial[,] [i]t is the [hearing

officer]'s duty to investigate the facts and develop the

arguments both for and against granting benefits, and the

Council's review is similarly broad."  Id. at 110-11 (internal

citations omitted).

Here, Silva filed an application for review of the hearing

officer's decision on November 20, 2015.  Admin. R. 16.  In the

application, Silva makes a blanket statement objecting to the

"multiple errors" made by the hearing officer's decision.  Id.

Under the relevant regulations, however, Silva was not required

to raise specific issues or file briefs.  See Sims, 530 U.S. at

113 (O'Connor, J., concurring) ("[T]he regulations provide no

notice that claimants must also raise specific issues before the

Appeals Council to reserve them for review in federal court

. . . . [To] request Appeals Council review, a claimant need not

file a brief."); 20 CFR § 404.900(b).  Given the "informal [and]

nonadversary" nature of the review process, Silva's failure to

_____

        [6] Initially, the Commissioner essentially argued waiver of
arguments.  See Def.'s Mem. 10-11 nn.5-6, 14 n.7, 15 n.8.  The
Court recognizes that "issues adverted to in a perfunctory
manner, unaccompanied by some effort at developed argumentation,
are deemed waived."  Redondo-Borges v. U.S. Dep't of Hous. &
Urban Dev., 421 F.3d 1, 6 (1st Cir. 2005) (quoting United States
v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990)).  As highlighted
during oral argument, however, the pertinent question is not
whether an issue is waived due to lack of argumentation but
rather one of issue exhaustion in an administrative proceeding.

identify specific issues for review before the Appeals Council does not result in "issue exhaustion."  <u>Sims</u>, 530 U.S. at 111-12.  Moreover, when notified by the Appeals Council of its decision to review Silva's case, Silva challenged the Appeals Council's intention "to change the exertional category relied upon by the [hearing officer] from sedentary," and requested a new hearing before the Appeals Council.  Admin. R. 381-82.

Accordingly, this Court rejects the Commissioner's waiver argument and proceeds to review Silva's challenges to the Commissioner's decision.

**C.  Silva's Challenges**

Silva raises three challenges to the Commissioner's decision.  First, he argues that the Commissioner denied him the right to a fair hearing by refusing his counsel further cross-examination of Estelle R. Hutchinson ("Hutchinson"), the vocational expert, and refusing to receive rebuttal evidence.  Pl.'s Mem. 4-9.  Second, Silva argues that the Commissioner erred in determining his residual functional capacity.  <u>Id.</u> at 9-12.  Third, he asserts that the Commissioner erred in adopting the hearing officer's finding of mental impairment without a corresponding functional limitation.  <u>Id.</u>  The Court addresses these contentions in turn.

**D.   Right to Fair Hearing**

Silva maintains that the Commissioner violated his "procedural rights under the agency's own regulations and . . . the due process clause of the Fifth Amendment."  Pl.'s Mem. 5.  Specifically, Silva claims the hearing officer terminated cross-examination of Hutchinson before Silva's counsel could ask additional questions on the job numbers for a ticket seller in Massachusetts and in the United States, id., and whether "[Silva's] functional limitations would nevertheless allow him to perform the job of ticket seller," id. at 8.  He argues that his counsel did not probe further due to the hearing officer's assumption that the number of jobs need not be inquired because Silva was limited to sedentary work.  Id. at 4-5.

Due process affords an individual the "opportunity to be heard."  Goldberg v. Kelly, 397 U.S. 254, 267 (1970).  Particularly "where questions of fact [are involved], due process requires an opportunity to confront and cross-examine adverse witnesses."  Id. at 269.  An administrative order is void if a hearing was granted but "was inadequate or manifestly unfair."  Interstate Commerce Comm'n v. Louisville & N.R. Co., 227 U.S. 88, 91 (1913).  Section 405 of the Act ensures that the claimant's due process rights are secured by requiring the Commissioner to make her decision after the claimant has received an opportunity to be heard.  42 U.S.C. § 405(b)(1).

The Supreme Court refers to the hearing under section 405 as an "evidentiary hearing" and "de novo review" by the hearing officer.  Heckler v. Day, 467 U.S. 104, 107 (1984); see also Shalala v. Illinois Council on Long Term Care, Inc., 529 U.S. 1, 120 (2000).

It is undisputed that on August 31, 2015, Silva had a hearing before a hearing officer, Admin. R. 21, 51-84, and that Silva cross-examined Hutchinson at the hearing, id. at 77-85.  The issue is whether, as a result of the hearing officer's refusal to allow further cross-examination on job numbers, the Commissioner's decision is void because the initial hearing was "inadequate and manifestly unfair."  See Interstate Commerce Comm'n, 227 U.S. at 91 ("[A]dministrative orders, quasi judicial in character, are void if a hearing was . . . granted [but] was inadequate or manifestly unfair.").  Here, at the administrative hearing, Silva had the opportunity to confront and cross-examine Hutchinson's testimony, later relied on by the commissioner. Admin. R. 8, 77-85; see also Goldberg, 397 U.S. at 270. But see Greene v. McElroy, 360 U.S. 474, 508 (1959) ("[T]he respondents were not empowered to deprive petitioner of his job in [an administrative] proceeding in which he was not afforded the safeguards of confrontation and cross-examination.").  The right of cross-examination, however, is not absolute, and reasonable limits may be placed on cross-examination based on factors such

as relevance.  See, e.g., DiBenedetto v. Hall, 176 F. Supp. 2d
45, 55 (D. Mass. 2000) (Keeton, J.) (citing Delaware v. Van
Arsdall, 475 U.S. 673, 679 (1986)).  Here, Hutchinson testified
that Silva could perform the job of a ticket seller and Silva's
counsel had the opportunity to question Hutchinson about it.
See Def.'s Mem. 3-4, 15-16; Admin. R. 76-84.  Silva also had the
opportunity to submit further evidence.  Admin. R. 5, 7-8.
Because Silva and his counsel had the opportunity to confront
and cross-examine Hutchinson, and also to submit new evidence
after the hearing, the administrative order is not void as a
result of an "inadequate or manifestly unfair" hearing.

### E.    Residual Functional Capacity

The Commissioner adopted the hearing officer's findings of
fact and conclusions of law up to step 4, determining that Silva
"is not capable of performing past relevant work."  Admin. R. 4.
In the RFC determination, however, the Commissioner rejected the
hearing officer's finding of a sedentary exertional level, and
found that Silva was not disabled because "[Silva's] capacity
for standing or walking [was] only slightly reduced from the
full 'light' exertional level."  Id. at 5.  The Commissioner
concluded that, based on the vocational expert's testimony and
applicable regulations, Silva retained the RFC and vocational
profile to perform the job of ticket seller.  Id. at 6.  As a
foundational matter, Silva points out that light work, i.e.,

work requiring greater exertion than sedentary work, "calls for

. . . <u>a good deal of walking or standing</u>, or when it involves

sitting most of the time with some pushing and pulling of arm or

leg controls."  Pl.'s Mem. 7 (alteration in original) (citing 20

C.F.R. § 404.1567(b)).

First, Silva argues that he can perform only sedentary work

because he can only stand or walk for four hours.  <u>Id.</u>  Silva

points out that a full time ticket seller's job requires the

ability to stand for six hours and, thus, is a light work job.

<u>Id.</u> at 6.  In response, the Commissioner argues that Silva has

the physical RFC to lift or carry "20 pounds occasionally and 10

pounds frequently," which corresponds to the "requirements of

light work, rather than sedentary work."  Def.'s Mem. 14.

Further, the Commissioner states that Silva's capacity to stand

or walk for four hours in total "falls in between the exertional

requirements for sedentary and light work."  <u>Id.</u>  The

Commissioner notes that in such situations, vocational expert

testimony is advisable.  <u>Id.</u> at 14-15.  Silva questions the

vocational expert, Hutchinson's reliance on her past experience

to reduce job numbers in the national economy, based on the job

classification and hypothetical, rather than the Dictionary of

Occupational Titles' ("DOT").  Pl.'s Resp. 10; Admin. R. 43.

Silva further argues that Hutchinson was required to, but failed

to provide an explanation for deviations from the DOT, <u>i.e.,</u>

"why [the ticket seller job] did not always require the typical six hours per day of standing."  Pl.'s Resp. 9.  The Commissioner responds that Hutchinson appropriately considered the demands of the ticket seller's job and Silva's limitations reflected in the hypothetical question posed to her.  Def.'s Mem. 18-19.

Social Security Ruling 83-12 discusses the situation "where the rules [] direct different conclusions, and the individual's exertional limitations are somewhere 'in the middle' in terms of the regulatory criteria for exertional ranges of work."  SSR 83-12, 1983 WL 31253, at *3 (Nov. 28, 1978).  In such situations, SSR 83-12 acts as guidance for the hearing officer, and recommends the assistance of a vocational expert to determine whether the "remaining occupational base support[s] a conclusion as to disability."  Id.  Where a claimant's RFC falls between two exertional ranges, the Medical-Vocational Guidelines ("Grids") are inconclusive.  Stephens v. Barnhart, 50 Fed. App'x 7, 10 (1st Cir. 2002) ("If the ALJ's finding that Stephens was capable of some medium work is sustainable, Stephens' RFC would fall between two exertional ranges, thereby rendering the Grids inconclusive.").  In such a case, because the "extent of erosion of the occupational base is not clear," a vocational expert ought be consulted.  SSR 83-12, 1983 WL 31253, at *2.

Silva's physical RFC is between sedentary and light exertional level work. Silva can lift or carry up to 20 pounds occasionally and 10 pounds frequently, which meets the lifting requirement of light work. Admin. R. 29. Silva cannot, however, perform the full range of light work which requires "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday," SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983), as he is unable to stand or walk for four hours,[7]

---

[7] SSR 83-10 clarifies the requirements of sedentary and light work:

1. Sedentary work. The regulations define sedentary work as involving lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools . . . .

'Occasionally' means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday. Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.

2. Light work. The regulations define light work as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing -- the primary difference between sedentary and most light jobs . . . .

'Frequent' means occurring from one-third to two-thirds of the time. Since frequent lifting or carrying

Admin. R. 29. Accordingly, "to determine the extent to which [Silva's] limitations eroded the unskilled sedentary occupational base," Admin. R. 43, the hearing officer appropriately sought Hutchinson's assistance. Id.

A hearing officer may credit a vocational expert's opinion, given on the basis of her expertise and professional experience. See Saia v. Barnhart, No. Civ.A.03-11989-RWZ, 2005 WL 152126, at *3 (D. Mass. Jan. 25, 2005) (Zobel, J.) ("[A]n expert's evidence 'can include information not listed in the DOT,' and '[i]nformation about a particular job's requirements or about occupations not listed in the DOT may be available . . . from a [vocational expert's] . . . experience in job placement or career counseling.'" (quoting SSR 00-4 (Dec. 4, 2000))). Furthermore, "the ALJ may prefer to rely in some complex cases on the vocational expert rather than on the DOT, given the expert's ability to tailor his opinion to the particular limitations of a claimant." Correia-Pires v. Astrue, Civil

_____

   requires being on one's feet up to two-thirds of a
   workday, the full range of light work requires
   standing or walking, off and on, for a total of
   approximately 6 hours of an 8-hour workday. Sitting
   may occur intermittently during the remaining time.
   The lifting requirement for the majority of light jobs
   can be accomplished with occasional, rather than
   frequent, stooping . . . .

SSR 83-10, 1983 WL 31251, at *5-6.

Action No. 10-10724-DPW, 2011 WL 3294903, at *11 (D. Mass. July 29, 2011) (Woodlock, J.) (citations omitted).

Here, the evidence underlying the hearing officer's physical RFC finding, i.e., Silva has the ability to "lift and/or carry 20 pounds occasionally and 10 pounds frequently, and is able to stand and/or walk for 4 hours,"[8] Admin. R. 29; Pl.'s Resp. 9; Def.'s Mem. 14, is undisputed. The hearing officer sought Hutchinson's opinion on the number of jobs available, given Silva's physical RFC, age, education, and work experience. Admin. R. 43. Hutchinson reasoned that the "government does not provide job numbers by DOT code, but rather by occupational groups," and accordingly reduced the numbers based "on her experience and understanding of how a job is performed." Id. Given the substantial evidence in the record for the physical RFC finding and because Hutchinson was not required to testify with "specificity [as to] figures or sources," and was permitted to base her conclusion on her experience and judgment, the hearing officer reasonably credited her testimony. See Edwards v. Sec'y of Health and Human Servs., No. 94-1345, 1994 WL 481140, at *1-2 (1st Cir. 1994) (affirming

---

[8] Though the parties recognize the hearing officer's determination of Silva's limitations, they dispute whether Silva's physical RFC corresponds to the requirements of light work or sedentary work. Pl.'s Mem. 4-9; Pl.'s Resp. 8-11; Def.'s Mem. 14.

decision that relied on vocational expert's opinion incorporating doctors' reports that claimant could only perform "less than the full range of sedentary jobs available"). Accordingly, this Court rejects Silva's challenge to the vocational expert's opinion.

###### F. Mental Impairment Leading to Functional Limitations

Silva argues that his "moderate limitations in both social functioning and in maintaining concentration, persistence or pace" affect his ability to perform unskilled work.  Pl.'s Mem. 11.  Silva claims that the hearing officer and the Commissioner failed to take into account these moderate mental limitations while evaluating Silva's RFC, id., and objects to the imposition of any such limitation to unskilled work alone, Pl.'s Resp. 1. He further challenges the hearing officer's alleged failure to provide the basis for such decision and argues that she did not provide "good reason" for rejecting the treating physician, Dr. Carlos Correia's opinion.  Def.'s Mem. 6, 8.

On the issue of moderate limitation in attention and concentration, Silva points out Hutchinson's testimony stating that these "moderate limitations . . . would preclude the jobs she gave."  Pl.'s Mem. 9; Admin. R. 80.  Silva relies on the diagnosis of "major depressive disorder and anxiety disorder" by psychologist, Dr. Sheree Estes.  Pl.'s Mem. 10.  Silva argues that his mental impairment affects his ability to work.  Id.

Next, Silva argues that the ticket seller job is a Level 3 reasoning job, and that according to Dr. Correia, Silva "could not meet even the requirements for Level 2 reasoning." Pl.'s Resp. 7. In response, the Commissioner argues that "the [hearing officer] provided ample support for his findings within the RFC analysis," Def.'s Mem. 10, citing evidence that the hearing officer considered while making the RFC determination, such as Dr. Correia's statement, which indicates limitations in Silva's ability to concentrate but no "marked limitation in ability to understand, remember, or carry out very short and simple instructions," id. at 10-11.

Next, Silva asserts that while he has no difficulty in superficial interactions, his moderate limitations in both maintaining social functioning and in maintaining concentration, persistence or pace require a corresponding mental RFC limitation. Pl.'s Mem. 10-11. The Commissioner states that "the records did not support greater limitations than a restriction to unskilled work," which requires working with objects rather than people, Def.'s Mem. 11, and that the plaintiff fails to challenge the hearing officer's "explicit and well-reasoned explanation," id. at 12.

Generally, "[a] finding of moderate limitations in maintaining concentration, persistence, or pace, does not necessarily preclude the performance of unskilled work." Perry

v. <u>Astrue</u>, No. CIV.A. 11-40215-TSH, 2014 WL 4965910, at *6 (D. Mass. Sept. 30, 2014) (Hillman, J.) (citing <u>Falcon–Cartagena</u> v. <u>Comm'r of Soc. Sec.</u>, 21 Fed. App'x 11, 14 (1st Cir. 2001)); <u>see also</u> <u>Ortiz</u> v. <u>Sec'y of Health & Human Servs.</u>, 890 F.2d 520, 527 (1st Cir. 1989) ("In light of these 'moderate' restrictions . . . apart from [the claimant] being relegated to jobs of an unskilled nature, 'the claimant's capacity for the full range of light work was not significantly compromised by his additional nonexertional limitations.'"). Moreover, the Commissioner's decision is conclusive, "even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence," <u>Rodriguez Pagan</u> v. <u>Sec'y of Health & Human Servs.</u>, 819 F.2d 1, 3 (1st Cir. 1987), and the correct legal standard was used, <u>Seavey</u>, 276 F.3d at 9. The Commissioner, and not this Court, bears the "responsibility for weighing conflicting evidence, where reasonable minds could differ as to the outcome." <u>Id.</u> at 10.

Silva's reliance on this Court's decision in <u>Cohen</u> v. <u>Astrue</u>, 851 F. Supp. 2d 277, 286 (D. Mass. 2013), to support his contention that "the [Commissioner] found moderate limitations but failed to properly asses corresponding limitations," is misplaced and fails for two reasons.[9] First, unlike in <u>Cohen</u>,

---

[9] In <u>Cohen</u>, this Court dealt with a situation where in which the vocational expert's hypothetical did not include "moderate

the vocational expert here was provided with a hypothetical
which involved a person with "marked limitation" in
concentration and attention.  Admin. R. 80.  Second, this Court
did not specifically state that moderate limitations have
"corresponding limitations" in the RFC.  In Cohen, the hearing
officer omitted her finding of the claimant's "moderate
limitation" from the hypothetical given to the vocational
expert, therefore this Court found that the vocational expert's
opinion did not reflect the hearing officer's RFC determination.
Cohen, 851 F. Supp. 2d at 286.  Silva's interpretation,
therefore, is misguided, particularly so in light of the First
Circuit's recognition that a claimant can do unskilled work
despite "moderate limitations in concentration, persistence and
pace."  Perry, 2014 WL 4965910, at *6; see also Falcon-
Cartagena, 21 Fed. App'x at 14; Ortiz, 890 F.2d at 527.

Next, the Commissioner considered the records and medical
opinions, including opinions of the treating physicians and the
consultative examiners, Admin. R. 7-9, 28-44, and provided ample
details to support the finding that the "moderate limitations"
do not limit Silva's mental RFC.  See Perez v. Sec'y of Health,

---

limitations in concentration, persistence and pace" and
accordingly, the Court "[did] not question the hearing officer's
determination of the significance of [the claimant's] 'moderate'
limitation, but [noted that] surely that limitation . . . [was]
not the equivalent of no limitation at all."  Cohen, 851 F. Supp.
2d at 286.

Educ. & Welfare, 622 F.2d 1, 2-3 (1st Cir. 1980).  For example,
the Commissioner explains that "Dr. Correia's statement . . .
support[s] the [hearing officer's] finding that [Silva] is
limited to unskilled work but does not support a finding that
his mental limitations would prevent him from performing all
jobs."  Admin. R. 6.  Additionally, the Commissioner relies on
Hutchinson's testimony and records from the Adcare Hospital and
Southcoast Health to support the finding that Silva's RFC is not
below the light level.  Id. at 7.

     Although Silva has moderate limitations in concentration,
persistence, and pace, he has only mild restrictions in
activities of daily life and social functioning with no repeated
episodes of decompensation.  Id.  The Commissioner, therefore,
appropriately concluded that the new evidence provided by Silva
does not change the hearing officer's findings on the mental RFC
for four reasons, id. at 7-8; Def.'s Mem. 12.  First, evidence
from Silva's psychologists, Drs. Shestopal, Kasdan, and Estes,
suggests moderate limitations in concentration and attention,
but it is not sufficiently "overwhelming" to compel a finding of
limitations that would prevent him from doing all work.  See
Perez, 622 F.2d at 2-3.  Second, the Commissioner has authority
to resolve conflicts and contradictions in medical records.
Sitar v. Schweiker, 671 F.2d 19, 22 (1st Cir. 1982); see also
Rodriguez Pagan, 819 F.2d at 3.  Third, the Commissioner gives a

detailed evaluation based on the medical records and evidence such as Silva's "Function Reports," "EAEDC Medical Report," and Bristol County Jail records.  Admin. R. 7-8, 26-29, <u>Perez</u>, 622 F.2d at 2 (relying on medical records and other evidence of record to support a claim for disability).  Fourth, even though the hearing officer gives great weight to the state agency psychologist's opinions in limiting Silva to unskilled work, Admin. R. 41, he explains comprehensively the reasons for doing so, <u>id.</u> at 28-42. <u>Contrast</u> <u>Sitar</u>, 671 F.2d at 22 ("[A] treating physician's diagnosis is not necessarily entitled to more weight than that of a [consultative] psychiatrist who examines the claimant only once.").

In view of the Commissioner's evaluation of the medical records and detailed explanations, this Court therefore concludes that there is substantial evidence that "a reasonable mind might accept to support a conclusion" limiting Silva's mental RFC only to unskilled work.  <u>Perez</u>, 622 F.2d at 2-3 (relying on the consultative examiner's opinion on RFC because it was "substantiated," "detailed and accompanied by specific clinical and laboratory findings," and "consistent with some of the other evidence of record").

## III. CONCLUSION

For the foregoing reasons, this Court DENIES Silva's motion to reverse, ECF No. 17, and GRANTS the Commissioner's motion to affirm the Commissioner's decision, ECF No. 22.

**SO ORDERED.**

<u>/s/ William G. Young</u>
WILLIAM G. YOUNG
DISTRICT JUDGE